STATE of Wisconsin, Plaintiff-Appellant,

v.

Albert E. BROOKS, Defendant-Respondent-Petitioner.

Supreme Court

No. 82–1280–CR.  Argued June 2, 1983.—Decided July 1, 1983.

(Also reported in 335 N.W.2d 354.)

For the petitioner there were briefs and oral argument by *Mark Lukoff*, first assistant state public defender.

For the plaintiff-appellant the cause was argued by *Bruce J. Landgraf*, assistant district attorney for Milwaukee county, with whom on the brief was *E. Michael McCann*, district attorney.

HEFFERNAN, J.   This is a review of an unpublished decision of the court of appeals dated November 22, 1982, which held that the circuit court for Milwaukee county, THOMAS P. DOHERTY, Judge, abused its discretion when it dismissed a proceeding charging Albert E. Brooks with unlawfully refusing to submit to a chemical-intoxication test required by the provisions of sec. 343.305, Stats., the implied consent law. We reverse the decision of the court of appeals because the circuit court appropriately exercised its discretion to dismiss when it based the dismissal upon the fact that Brooks had pleaded guilty to the underlying charge of operating a motor vehicle while under the influence of an intoxicant and, hence, the reason for the proceedings to impose sanctions for the refusal to take the intoxication test had been accomplished.

We hold that the implied consent law is designed to induce persons to submit to an alcohol test to expedite securing evidence to determine whether or not a suspected person is intoxicated to a degree warranting a charge of operating a motor vehicle while under the influence of an intoxicant (OWI), contrary to sec. 346.63 (1), Stats. If the person who is charged with OWI, on the basis of other nonchemical-test evidence, subsequently pleads guilty, there no longer remains a need for penal-

ties for failure to submit to a test which has become unnecessary in the particular case.

The record shows that Brooks was arrested on January 20, 1982, for operating a motor vehicle while under the influence of an intoxicant.[1]

No alcohol test was taken, and the state alleges that Brooks, without lawful reason, refused to submit to the test. He was, however, given a citation for violation of sec. 346.63(1), Stats. 1979–1980.[2] He was also read his rights under sec. 343.305(3)(a) of the implied consent law, which, among other things, requires a recital to the person that a driver has impliedly consented to submit to a chemical test on demand as a condition of operating on the highways and that failure to submit to the test, subject to certain exceptions, could result in the revocation of operating privileges for not less than six months nor more than a year.

Brooks nevertheless refused to submit to the intoxication test. Accordingly, as required by sec. 343.305(3), Stats., the arresting officer gave him written notice that it was the intent of the state to seek a revocation of Brooks' operating privilege for failure to comply with the implied consent law.

Prior to the return date on the citation for the alleged violation of the implied consent law, Brooks requested a hearing, as he is permitted to do by sec. 343.305(3)(b)4, Stats. At the hearing, the circuit court was informed that Brooks had already pleaded guilty to the underlying

---

[1] The record supports the conclusion that Brooks had never before been found guilty of OWI.

[2] All statutes referred to herein are 1979–1980. Our holding herein only addresses itself specifically to the consequences arising under those statutes. Sec. 346.63(1), Stats., the underlying OWI statute, has, however, not been changed by any subsequent statutory revisions. Portions of the implied consent law have, however, been revised subsequent to the events in this case. We do not purport to address ourselves to the effect of any of these changes.

OWI charge in the municipal court for the city of Milwaukee. Upon being so informed, Circuit Judge Thomas P. Doherty stated:

"[I]f there has been a plea to the basic charge of operating under the influence, I am going to dismiss the refusal on the proposition that the purpose of the refusal . . . at least as it existed at the time of this offense, was to support the prosecution of the OWI.[3]
"There having been no frustration of the prosecution of the OWI case, I don't think it's appropriate they proceed with the refusal."

The record in the circuit court shows that the court was informed of the municipal court's action by Brooks' counsel stating, "Yes, Judge. The defendant pled guilty. He was fined $400 for that [OWI] and his license."[4]

The circuit court dismissed the refusal action.

The state appealed the dismissal order to the court of appeals. The court in a per curiam opinion stated that the refusal proceeding under sec. 343.305, Stats., was a special proceeding distinct from the prosecution of OWI brought under sec. 346.63(1).

The court of appeals expressed its rationale by stating:

"The decision as to whether to dismiss an action lies within the discretion of the trial court and this court will not reverse unless there has been an abuse of discretion. A hearing to determine the reasonableness of a refusal is a special proceeding which is separate and distinct from the prosecution for driving under the influence under sec. 346.63(1), Stats. This court concludes that a guilty plea to sec. 346.63(1) does not make the sec. 343.305 refusal proceeding moot. Accordingly, this court holds that the trial court abused its discretion when it dismissed the refusal proceeding." [Footnotes omitted.]

---

[3] The date of the offense was January 20, 1982; the date of the hearing before Judge Doherty was May 26, 1982.

[4] We point out that, in the petition for review, the undisputed fact presented was that Brooks had, in the municipal court, paid a

Based on this reasoning, the court of appeals reversed the circuit court and remanded the case to the circuit court for further proceedings on the refusal action.[5] We reverse the court of appeals.

Initially, we note that whether or not the refusal proceeding is an action or proceeding separate from the OWI prosecution is not of controlling relevancy where the question, stated by the court of appeals and conceded by both the state and the public defender's office, is whether the trial court abused its "discretion" when it dismissed the refusal case following the disposition of the OWI prosecution. Were the proceedings not separate, no question of discretion could arise and the disposition of the OWI charge would have impelled, as a matter of law, the dismissal of the refusal action. Clearly, the actions are

$400 fine and sustained a *revocation* of his operating privileges. It was on this state of facts that the trial court and the court of appeals made their decisions. Subsequently, after filing of the acceptance of this case for review, the public defender's office "corrected" the record to show that the computer printout of the judgment rendered in the municipal court recited that Brooks' license had been "suspended." The public defender contemporaneously pointed out that the only legally correct or permissible penalty at the time was not "suspension" but "revocation," and, hence, the sanction imposed by the municipal court was the "revocation" of license for OWI. The state has seized upon the distinction between revocation and suspension as a controlling factor in the outcome of this case. As pointed out, however, the trial court, the court of appeals, and this court on the petition for review treated the action of the municipal court as a "revocation." The issue of "suspension," as contrasted to "revocation," was never raised nor pressed by the state prior to the submission of its responsive brief on this review. We treat the action of the municipal court as a revocation —as it was indeed regarded by the courts which gave this matter their attention prior to this review.

[5] We note that two other cases (*State v. Borchardt*, No. 82–1279–CR, and *State v. Kwiecinski*, No. 82–1281–CR) were companion cases to *State v. Brooks* in the court of appeals. Review in this court was asked only in respect to *Brooks*.

separate ones separately brought. To hold, however, that because they were separate both actions must be continued to judgment begs the question posed by the parties.

The question is whether the purpose of the implied consent law and the refusal proceedings is so intimately connected with the OWI law that they exist for the purpose of securing evidence to sustain prosecutions under sec. 346.63(1), Stats., and that, once a prosecution has been completed by a plea of guilty, the legislative purpose for the imposition of potential sanctions for refusal to give an intoxication test has been accomplished. Hence, the argument goes, the refusal proceeding should be dismissed, because the legislative intent has been fully served.

We, however, do not think the concept of mootness urged by the defendant is appropriate. Rather, the question is whether, assuming the trial judge was correct in his assumption that the only purpose of the implied consent law is to furnish evidence of intoxication, the trial judge could, in his discretion, protect his calendar and promote efficiency and the conservation of limited judicial resources by refusing to undertake a substantially useless judicial proceeding.

On the other hand, if the trial judge's basic legal predicate was erroneous, *i.e.*, that in fact it was the legislature's intent to have the refusal proceedings go to final judgment irrespective of the disposition of the underlying OWI charge, then the act of the trial court in dismissing was an abuse of discretion, for discretion can never be exercised appropriately when based on an error of law. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

The fundamental question posed and at issue between the parties is whether the legislature intended to require the courts to see to it that the refusal hearing in all circum-

stances be tried to a conclusion, because it served a purpose unrelated to the prosecution of an OWI case.

The state does not attempt to argue that a court does not have the inherent discretion to dismiss an action that can have no effect in advancing the legislative purpose. What it does argue is that it was the legislature's purpose to carry the refusal citation to hearing and judgment because the actions are for separate types of conduct and carry separate penalties. The state also points out that, although the penalty for OWI may be fine, imprisonment, or revocation, the penalty for refusal to submit to the test is confined to license revocation. The state also asserts that, where revocation is the penalty, the minimum period for refusal is always in excess of the minimum for OWI. We note that, in this latter respect, the state is somewhat in error, for the assertion is true only when rehabilitative treatment is offered by the court and accepted by the driver. Otherwise, the minimum periods for second and subsequent offenses under the applicable law are the same. Sec. 343.30(1q)d and 343.305(9)(d), Stats.

The state also argues that the refusal proceedings were intended to coerce production of reliable evidence of intoxication and that to allow a driver to cure an unlawful refusal by a plea of guilty to OWI thwarts that legislative purpose. The state appears to argue that the evidence of intoxication has an importance that transcends the question of guilt or not in the particular case—that it is of importance to the system of justice to know the percentage of blood alcohol in a driver in each case—apparently for statistical purposes.

The state also, as set forth above in footnote 4, for the first time quibbles over whether the defendant was "suspended" rather than "revoked." Under the law in effect for this case, "suspension" was not appropriately available. Also, it should be apparent to the state that we did

not accept jurisdiction for the purpose of making a decision on this narrow basis. Under the law as it existed under the 1979–1980 statutes, a judgment of suspension could only be entered when a court erroneously in an individual case misdenominated its judgment. We did not take this case to correct the municipal court's possible error in semantics.

Finally, the state asserts that, although it were determined that no practical consequences could immediately ensue if a finding of wilful refusal was made, yet such finding would thereafter appear in a driver's record. Such a record would show a contempt for driving laws and, hence, would serve as a stigma on the miscreant's record for future prosecutorial and judicial guidance.

We find these arguments unpersuasive. As indicated above, whether there are two separate proceedings is immaterial—although clearly there are. *Suspension of Operating Privilege of Bardwell*, 83 Wis. 2d 891, 902, 266 N.W.2d 618 (1978). But it must immediately be apparent that fundamentally they are not unrelated actions, for both arise out of the same basic occurrence—a single alleged episode of driving while under the influence. Moreover, the penalty of revocation for refusal cannot be wholly consecutive to one imposed for OWI. Under sec. 343.305(9)(e), Stats., the period of revocation imposed under the implied consent law must be reduced by the period of any revocation ordered under the OWI penalties.

The crux of the question is whether the refusal penalty of the implied consent law serves a purpose separate from the OWI law or whether it is intended to be an aid to OWI prosecutions. Is its intent to impose penalties solely for the purpose of coercing persons to submit to an intoxication test or are the penalties structured in such a way that the possibility for greater penalties under the

refusal law is calculated to induce pleas of guilty to the underlying charge of OWI. The fact that, when a driver does not submit to a test, he may be subject to greater penalties than he would have been subject to had he taken the test and been determined to be intoxicated supports the proposition that the purpose of the refusal procedure is to induce a driver to plead guilty and accept the same penalties that would have been imposed had the guilt been proved by a blood-alcohol test.

Under this rationale, which we believe to be valid, the purpose of the refusal law—to penalize drunk drivers by finding them guilty—is satisfied by the guilty plea to OWI. By conduct calculated to avoid the refusal penalties—the pleading of guilty—the purpose of both laws, OWI and the implied consent law, are served in accordance with the legislative will.

This philosophy of the relationship between OWI and the refusal penalties of the implied consent law has long been stated by this court. In a recent case this court said:

"The sole purpose of the blood alcohol test is to facilitate prosecution of those driving while under the influence of an intoxicant." *State v. Welsh,* 108 Wis. 2d 319, 336–37, 321 N.W.2d 245 (1982), cert granted on other grounds, —— U.S. —— (1983).

In *State v. Neitzel,* we said:

"The purpose behind the implied consent law is to facilitate the gathering of evidence against drunk drivers. *Scales v. State,* 64 Wis. 2d 485, 219 N.W.2d 286 (1974)." *State v. Neitzel,* 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980).

In *Bardwell, supra,* we said the purpose of the law was to obtain the blood-alcohol content in order to obtain evidence to prosecute drunk drivers. Such evidence was needed to improve the rate of convictions so that those who drive while intoxicated would be punished and so that others are deterred from driving while drunk. The

implied consent law can only serve its purpose if there are penalties for unlawfully revoking consent. This encourages those who are arrested to take the test so that convictions can be secured. Those who refuse may still be convicted of OWI after a trial, but even if they are not, they face revocation (although not a forfeiture or imprisonment for second and subsequent offenses) for the refusal. Thus, there is little to be gained by refusing.

The accurate, scientific evidence of blood-alcohol level is to be used to secure convictions. However, when an individual pleads guilty to OWI, there is no longer a need for such evidence. The conviction has been secured. The court has imposed the legislatively chosen penalty on the offender. Thus, the ultimate purpose of the implied consent law—successful prosecution of drunk drivers—has been accomplished. Accordingly, it was appropriate to dismiss the refusal proceeding. In a sense, the driver has made up for his refusal by cooperating with the authorities in pleading guilty.

Contrary to the assertion of the state, conduct such as that adopted by Judge Doherty in the instant case—the exercise of discretion to dismiss refusal proceedings if there is a plea of guilty to the underlying charge of OWI —is not antithetical to the purpose of drunk-driving laws. It promotes and supports the underlying purpose of the law to secure convictions of drunk drivers and to get them off the highways.

The state seems to think that, because, in some cases, a driver could receive a somewhat shorter revocation for the OWI conviction than for an unlawful refusal, the legislature intended that there be a separate judgment in each. In all cases, however, the maximum revocation period is the same. Accordingly, if the maximum revocation should be imposed in each proceeding, the periods would be offset and only one maximum period of revocation could be effective.

The reasonably apparent purpose of the legislative scheme was to offer a driver who had refused to take the intoxication test the bitter carrot of the OWI conviction instead of the somewhat harsher stick of a refusal penalty. The purpose of the legislative scheme, and apparently the purpose has been realized by the practice utilized by Judge Doherty, is to make it less likely that an individual would contest the OWI charge. Once there has been a refusal to take the test as in the instant case, a driver will be induced to plead guilty to the offense of being a drunk driver, if the court may appropriately exercise its discretion by dismissing the refusal procedure following the conviction of OWI. Judge Doherty's approach to the problem served the underlying purpose of the law—to convict drunk drivers and get them off the road and with the minimum disruption of trial court calendars. While a double judgment—if obtained in respect to the refusal proceedings and the OWI—can serve the purpose of imposing some stigma on the refuser as a scofflaw and as a drunk driver, we conclude that a trial court may appropriately exercise discretion and decide that the wound upon the court system by insisting on two proceedings when one would have kept the drunk driver from the highway is a greater assault on the justice system than is warranted by giving the drunk driver a second but comparatively nominal penalty.

We believe that the exercise of discretion, as in this case, by the trial court may well have the tendency to increase OWI convictions as well as to conserve limited judicial resources by encouraging guilty pleas and reducing the number of time consuming refusal hearings.

The state raises additional arguments which it asserts support its position that the trial court may not exercise its discretion to dismiss the refusal action although there has been a plea of guilty to the drunk-driving charge.

The state relies on sec. 967.055 (2), 1981–1982 Stats.,[6] and argues in its court of appeals brief that a court may not *sua sponte* dismiss a charge that is brought under either sec. 346.63 (1) (OWI) or sec. 343.305 (refusal), and, hence, the court has no discretion to dismiss either of these two cases. The very statute leads to the contrary inference. It is not the court's discretion that is limited but the prosecutor's. The statute requires the prosecutor to apply to the court, "if the *prosecutor* seeks to dismiss or amend a charge." (Emphasis supplied.) Moreover, the provisions of sec. 967.055 (2) are to apply "[n]otwithstanding s. 971.29." Sec. 971.29 is a general statute conferring upon prosecutors the right, subject to some conditions, to amend criminal complaints or informations. Thus, sec. 967.055 (2) further curtails the *prosecutorial* discretion, absent agreement by the court. The court's discretion to dismiss is unfettered by the statute upon which the state relies. While sec. 967.055 (2) was apparently not in effect at times pertinent to this case, the state appears to argue that it declares the legislature's presently intended limitation on trial court discretion. As pointed out above, it does nothing of the kind. To the extent sec. 967.055 (2) is relevant at all, it shows a legis-

---

[6] "967.055 **Dismissing or amending charges; operating a motor vehicle; alcohol, intoxicant or controlled substance.**

"(2) Dismissing or Amending Charge. Notwithstanding s. 971.-29, if the prosecutor seeks to dismiss or amend a charge under s. 346.63(1) or a local ordinance in conformity therewith, or s. 346.63 (2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle or an improper refusal under s. 343.305, the prosecutor shall apply to the court. The application shall state the reasons for the proposed amendment or dismissal. The court may approve the application only if the court finds that the proposed amendment or dismissal is consistent with the public's interest in deterring the operation of motor vehicles by persons who are under the influence of an intoxicant, a controlled substance or both.

lative intent to curtail a prosecutor's right to seek a dismissal. It has nothing to do with the power of a court in an instance when general discretionary facts could trigger a dismissal by the court.

Accordingly, we conclude that the general purpose behind the laws relating to operating while under the influence of intoxicants and implied consent to take alcohol tests—to get drunk drivers off the road as expeditiously as possible and with as little possible disruption of the court's calendar—is best served by the exercise of discretion in the dismissal of a refusal case once there has been a plea of guilty to the OWI charge.

We stress that the power to dismiss is a discretionary one. There may be circumstances where the court may conclude in a particular case not to dismiss the refusal charge although a plea of guilty to OWI has been taken. Whether such refusal to dismiss can be justified as a proper exercise of discretion will be dependent upon the ambience of the particular case.

We conclude in this case that the trial court appropriately exercised its discretion when it reasoned that the real purpose of the refusal law and the penalties for refusing an alcohol test was to expedite the conviction of drunk drivers. The judge correctly gave as his basic rationale under the facts, "There having been no frustration of the prosecution of the OWI case, I don't think it's appropriate they proceed with the refusal."

Because the trial court exercised its discretion in a manner consistent with the underlying purpose of the law, we uphold the dismissal of the refusal proceeding.

*By the Court.*—Decision of the court of appeals reversed.

STEINMETZ, J. *(dissenting).* An OWI charge and an unlawful refusal charge are distinct charges and should

be treated as separate prosecutions. Significantly, the legislature has placed these violations in two sections of the statutes, sec. 346.63(1), Stats. (OWI in the "Rules of the Road") and sec. 343.305 (refusal in the "Operators' Licenses"). A violation of the implied consent statute occurs at the time the defendant refuses upon request to submit to the test. It does not occur at the time of driving while under the influence of intoxicants. The only connection between the two violations is that one must already be under arrest for OWI for an implied consent violation to occur.

By agreeing with the trial judge's assumption that the *only* purpose of the implied consent law is to furnish evidence of intoxication, the majority jumps from an unwarranted assumption to a foregone conclusion. The closest this court has come to that rationale was in *State v. Neitzel,* 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980), where we said: "The purpose behind the implied consent law is to facilitate the gathering of evidence against drunk drivers." This case is the first time this court has said the implied consent law has only that purpose. I believe the implied consent law has an additional purpose. It is also intended to enforce the conditions that are imposed on drivers afforded the privilege of operating a motor vehicle on Wisconsin roads.

A flaw in the majority's reasoning is apparent when considering a defendant who is charged with OWI and unlawful refusal, pleads not guilty to the OWI charge and is subsequently found guilty of OWI at trial. According to the majority's logic, it would be within the discretion of the trial judge to dismiss the refusal proceeding since chemical test evidence was unnecessary to secure the OWI conviction. In other words, the implied consent law had served no purpose under these facts. I think it entirely inappropriate to dismiss under such cir-

cumstances. Under the implied consent law, a defendant must cooperate at the time of arrest with authorities if requested to submit to a test or suffer the consequences.

I also disagree with the majority's reasoning that conservation of limited judicial resources is a proper factor to consider when deciding if there has been an abuse of discretion in dismissing a refusal proceeding. I am well aware of the problem of crowded court calendars. However, promoting efficiency is no justification to dismiss a refusal proceeding. A judge has no discretion to dismiss a charge of a violation of the implied consent provision unless requested by the district attorney[1] or if the evidence is insufficient.

I would affirm the court of appeals.

I am authorized to state that JUSTICE ROLAND B. DAY joins in this dissenting opinion.

---

[1] The discretion that rests with the district attorney is evidenced by sec. 343.305 (8) (b) 2c, Stats. (1979–1980) which provides: "This section does not preclude the prosecution of the person for violation of s. 346.63 (1) or a local ordinance in conformity therewith."