# STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

## v.

## Joel G. ZIELKE, Defendant-Respondent.

Supreme Court

*No. 85–2003–CR. Argued February 9, 1987.—Decided April 3, 1987.*

(Also reported in 403 N.W.2d 427.)

For the plaintiff-appellant-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there was a brief by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee, and oral argument by *James A. Walrath.*

WILLIAM A. BABLITCH, J. Does sec. 343.305, Stats., (the implied consent law) provide the exclusive means by which police may obtain chemical test evidence of driver intoxication thereby requiring suppression upon noncompliance with the law?

The defendant, Joel G. Zielke (Zielke), was charged with four counts of homicide by intoxicated use of a motor vehicle. Blood was taken from him by medical personnel at the direction of the police. The procedures set forth in the implied consent law were concededly not followed.

The trial court found two separate bases to justify the taking of the blood: first, probable cause and

exigent circumstances existed at the time of the taking of the blood; second, Zielke actually consented.

Nevertheless, the circuit court of Milwaukee county, Judge Gary Gerlach presiding, suppressed the results of the chemical test. It concluded that the implied consent law is the exclusive means by which police may obtain chemical test evidence of driver intoxication, and therefore failure to comply with the procedures set forth in the implied consent law required suppression. The court of appeals affirmed. The State of Wisconsin (State) seeks review.

We conclude that the implied consent law is designed to facilitate, not impede, the gathering of chemical test evidence in order to remove drunk drivers from the roads. It is not designed to give greater fourth amendment rights to an alleged drunk driver than those afforded any other criminal defendant. It creates a separate offense that is triggered upon a driver's refusal to submit to a chemical test of his breath, blood or urine. It does not, however, prevent the State from obtaining chemical test evidence by alternative constitutional means. Suppressing the constitutionally obtained evidence in this case would frustrate the objectives of the law, lead to absurd results, and serve no legitimate purpose. Hence, we hold that noncompliance with the procedures set forth in the implied consent law does not render chemical test evidence otherwise constitutionally obtained inadmissible at the trial of a substantive offense involving intoxicated use of a vehicle. Accordingly, we reverse the decision of the court of appeals.

In May 1984, Zielke was charged with four counts of homicide by intoxicated use of a motor vehicle under secs. 940.09(1)(a) and (b), Stats. The accident which led to these charges occurred on April 28, 1984,

in the City of St. Francis, Wisconsin. Zielke's car allegedly struck from behind a motorcycle stopped at a red light. The driver and a passenger were on the cycle at the time. The impact caused the cycle and Zielke's car to strike another car driven by Mark Stolzel (Stolzel), which was stopped at a red light on the opposite side of the intersection. After this second collision the motorcycle flew through the air, crashed and immediately burst into flames. Despite efforts by Zielke and Stolzel to extinguish the flames, both the driver and passenger on the motorcycle were severely burned and died from their injuries.

According to testimony offered at the pretrial suppression hearing by the investigating officers, Robert Deck (Officer Deck) and Sergeant Terry Bronstad (Sergeant Bronstad), Zielke admitted at the scene that he was the driver of the car which struck the cycle. Officer Deck and Sergeant Bronstad testified that at the scene of the accident Zielke appeared confused, disoriented and emotionally upset. They observed that his speech was "slightly slurred and thick." They did not require Zielke to perform field sobriety tests at the scene because he was injured.

On the basis of his investigation at the scene, Sergeant Bronstad concluded that Zielke was probably under the influence of an intoxicant. Accordingly, he advised Officer Deck to return to the St. Francis Police Station to pick up a State of Wisconsin blood kit and the forms necessary to obtain a blood sample from Zielke. Officer Deck retrieved the blood test sample kit and then proceeded to the hospital where Zielke was taken for treatment of his burn injuries. Shortly after his arrival at the hospital Officer Deck testified he advised Zielke he was under arrest for operating a motor vehicle while intoxicated and read him the

*Miranda* warnings. According to Officer Deck, Zielke acknowledged he understood his rights and shortly thereafter Officer Deck asked Zielke if he would consent to the taking of a blood sample for analysis. Officer Deck testified that Zielke agreed by stating "Okay, all right" or "Go ahead." Officer Deck then gave the test sample kit to the emergency room physician who removed the blood sample.

Officer Deck testified that, on the advice of the Assistant District Attorney, he did not tell Zielke about any consequences flowing from refusal to submit to a test, nor did he read from the "Informing the Accused Form" issued by the Wisconsin Department of Transportation (DOT). That form sets forth the information which sec. 343.305(3)(a), Stats., requires police to disclose to drivers who are requested to submit to a chemical test. That section provides:

> "(3)(a) A law enforcement officer requesting a person to take a test under sub. (2) shall, at the time of the request and prior to the administration of any such test, inform the person:
> "1. That he or she is deemed to have consented to tests under sub. (1);
> "2. That if he or she refuses to submit to any such test his or her operating privilege shall be revoked under sub. (9); and
> "3. That in addition to the tests designated by the law enforcement agency under sub. (1), he or she may have an additional test under sub. (5)."
> Section 343.305(3)(a).

Zielke testified that he was unsure whether to give a blood sample because he was confused by the fact that he, rather than Stolzel, the driver of the other car involved in the accident, was under arrest. Zielke testified he finally did consent after Officer

Deck allegedly threatened him with automatic conviction for drunk driving and license revocation if he refused to be tested. Officer Deck directly disputed Zielke's claims that he threatened him with conviction and license revocation to obtain consent.

At the conclusion of the pretrial suppression hearing the trial court found that there was probable cause for the officers to arrest Zielke for either homicide by intoxicated use of a vehicle or homicide by negligent use of a vehicle and that there were exigent circumstances which justified the taking of a blood sample without first obtaining a warrant. The court further found that Zielke voluntarily consented to the seizure of his blood, concluding that Officer Deck's testimony concerning the drawing of the blood sample was "the more credible version" of events. The court also found that the blood was drawn in a reasonable manner.[1] Nevertheless, the court concluded that the blood test results had to be suppressed because Officer Deck did not advise Zielke of his right to an alternative test as provided by sec. 343.305(3)(a)3, Stats. The court of appeals summarily affirmed this ruling concluding that the failure of the police to advise Zielke as required by sec. 343.305(3)(a), requires suppression of the blood test results at trial.

The issue in this case, whether the implied consent law sets forth the exclusive method of gathering chemical test evidence thereby requiring suppression upon noncompliance, requires construction of the implied consent law. The construction of a statute is a question of law which this court decides independent-

---

[1]For purposes of this appeal, defendant does not contest these findings.

ly without deference to the determinations of the trial court and court of appeals. *DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985).

Both parties in this appeal request that the court clarify several points concerning the application and operation of Wisconsin's implied consent law, sec. 343.305, Stats. Specifically, the State contends that sec. 343.305 is not the exclusive legal means for police to obtain admissible chemical test evidence. The State argues that the implied consent law is not implicated in this case because police had two independent bases for obtaining the blood sample: 1) probable cause to arrest for homicide by intoxicated use of a motor vehicle and exigent circumstances, i.e., the fact that blood rapidly metabolizes alcohol leading to the eventual disappearance of the evidence of intoxication; and 2) actual consent of the driver. Either of these alone, the State contends, provided sufficient grounds for Officer Deck to obtain the blood sample. Therefore, he did not have to proceed under the implied consent law.

In contrast, Zielke argues that the implied consent law must be complied with whenever law enforcement officers request drivers to furnish blood, breath or urine samples for testing. Zielke argues that if the court adopts the position that sec. 343.305, Stats., is one of several alternative means for lawfully obtaining chemical test evidence, the implied consent law will rarely, if ever, be used by the police with drunk driving suspects because either probable cause and exigent circumstances or actual consent will almost always exist.

The opposing interpretations of the implied consent law advanced by the parties demonstrate the ambiguity of the statute. Section 343.305, Stats., does not specifically address the question of whether the

statute provides the exclusive means of obtaining chemical test evidence. It does not explicitly authorize any sanction, suppression or otherwise, if its procedural requirements are not followed. We must therefore go beyond the precise words of sec. 343.305 to discern the intent of the legislature. *E.g., In Interest of P.A.K.,* 119 Wis. 2d 871, 878, 350 N.W.2d 677 (1984).

When a statute does not define the precise scope of its application this court has consistently referred to the statute's history and other matters, such as the context, subject matter and object of the statute. *E.g., DeMars,* 123 Wis. 2d at 372. In determining the legislature's intent in this regard the court must presume the legislature intended an interpretation that advances the purposes of the statute, *e.g., Belleville State Bank v. Steele,* 117 Wis. 2d 563, 570, 345 N.W.2d 405 (1984).

This court has recognized that the intent of the legislature in passing the implied consent law was to facilitate the gathering of evidence against drunk drivers in order to remove them from the state's highway. *E.g., State v. Neitzel,* 95 Wis. 2d 191, 203–04, 289 N.W.2d 828 (1980). In *State v. Brooks,* 113 Wis. 2d 347, 335 N.W.2d 354 (1983), this court stated that the intent of the implied consent law was

> "to obtain the blood-alcohol content in order to obtain evidence to prosecute drunk drivers. Such evidence was needed to improve the rate of convictions so that those who drive while intoxicated would be punished and so that others are deterred from driving while drunk. ... The accurate, scientific evidence of blood-alcohol level is to be used to secure convictions." *Id.* at 355–56.

46

*See also Governor's Traffic Safety Program,* p. 4 (January 27, 1969); Wisconsin Department of Transportation *Implied Consent Packet* "Radio Talk—Implied Consent" (February 25, 1970); Chapter 20, laws of 1981, sec. 2051(13). With this intent in mind we proceed to an interpretation of the statute considering the context, subject matter and object of the statute, mindful that the court must liberally construe the law to effectuate the legislature's intent. *E.g., Scales v. State,* 64 Wis. 2d 485, 493–94, 219 N.W.2d 286 (1974).

The point of departure for the court's analysis is the recognition that two separate substantive offenses are potentially operative in all prosecutions involving intoxicated use of a vehicle. The first offense which may arise in a case involving intoxicated use of a vehicle is refusing to submit to a chemical test under sec. 343.305(2), Stats. If a driver refuses to take a test he or she faces automatic license revocation. The second substantive offense may involve operating while intoxicated (OWI), sec. 346.63, homicide by intoxicated use of a vehicle, sec. 940.09, or injury by intoxicated use of a vehicle, sec. 940.25. The penalties for violation of these statutes may include all or a combination of fines, imprisonment and license revocation. *See* secs. 343.30, 346.65 and 939.50(3)(d) and (e).

The refusal procedures set forth in sec. 343.305, Stats., are separate and distinct from prosecution for the offense involving intoxicated use of a vehicle. *Suspension of Operating Privilege of Bardwell,* 83 Wis. 2d 891, 902, 266 N.W.2d 618 (1978); *accord Brooks,* 113 Wis. 2d at 351–52, 354. The refusal procedures are triggered when an arrested driver refuses to honor his or her previously given consent implied by law to

submit to chemical tests for intoxication.[2] The consent is implied as a condition of the privilege of operating a motor vehicle upon state highways. *E.g., Neitzel,* 95 Wis. 2d at 201. By implying consent, the statute removes the right of a driver to lawfully refuse a chemical test. *See State v. Crandall,* 133 Wis. 2d 251, 255–57, 394 N.W.2d 905 (1986). The implied consent law attempts to overcome the possibility of refusal by the threat of an adverse consequence: license revocation. *Neitzel,* 95 Wis. 2d at 203–05. As stated in *Brooks,*

> "[t]he implied consent law can only serve its purpose if there are penalties for unlawfully revoking consent. This encourages those who are arrested to take the test so that convictions can be secured. Those who refuse may still be convicted of OWI after a trial, but even if they are not, they face revocation ... for the refusal. Thus, there is little to be gained by refusing." *Brooks,* 113 Wis. 2d at 355–56.

We note that 1987 Act 3 increased the license revocation penalty for a first time refusal to 12 months effective March 1, 1987. The revocation penalty is now greater for refusal to submit to a chemical test than it is for conviction of the underlying drunk driving offense. 1987 Wisconsin Act 3, sec. 20.

The statutory scheme, specifically sec. 343.305(3)(b) and (8)(b), Stats., also contemplates that a license will not be revoked for refusal to submit to a chemical test if the procedures set forth in sec.

---

[2]This case on its facts does not present the issue of whether license revocation is implicated if the police, having complied with the procedures of sec. 343.305, Stats., proceed to obtain chemical test evidence despite the defendant's refusal. We neither consider nor decide that issue.

343.305(2) and (3)(a) are not followed. Section 343.305(8)(b) states that

> "[i]f one or more of the issues [set forth in sec. 343.305(3)(b)5] is determined favorably to the person, the court shall order that *no action be taken on the operating privilege* on account of the person's refusal to take the test in question. *This section does not preclude the prosecution of the person for violation of s. 346.63(1) or a local ordinance in conformity therewith, s. 346.63(2), 940.09 or 940.25."* (Emphasis added.)

This section demonstrates the separateness of the civil refusal proceeding set forth in sec. 343.305 and the underlying criminal offenses involving operating a motor vehicle while intoxicated set forth in secs. 346.63, 940.09 and 940.25.

This statutory scheme provides incentive for the police to comply with the procedures of the implied consent law. If the procedures set forth in sec. 343.305, Stats., are not followed the State not only forfeits its opportunity to revoke a driver's license for refusing to submit to a chemical test, it also loses its right to rely on the automatic admissibility provisions of the law, sec. 343.305(7).

There is a further incentive for statutory compliance: the fact of the defendant's refusal to submit to a test may be introduced at trial on the substantive drunk driving offense as a means of showing consciousness of guilt. This court recognized in *State v. Bolstad,* 124 Wis. 2d 576, 370 N.W.2d 257 (1985) "[t]hat refusal evidence is relevant, because it makes more probable the crucial fact of intoxication, be-

cause as *State v. Albright* [98 Wis. 2d 663] at 668 said, 'A reasonable inference from refusal to take a mandatory [blood alcohol] test is consciousness of guilt.' " *Id.* at 585; *see also* Wis. JI—Criminal 235, "Refusal of Defendant to Furnish Sample for Alcohol Test" (1986).

The opportunity to introduce the fact of refusal presupposes that a defendant has been advised of his or her rights as required by sec. 343.305(3)(a), Stats. This was made clear in the court's recent decision in *Crandall.* In *Crandall,* the court held that the due process clause of the Wisconsin Constitution, Art. I, sec. 8(1), did not require that a defendant accused of operating a motor vehicle while intoxicated be warned that refusal to submit to a chemical test can be used against the defendant at trial. *Crandall,* 133 Wis. 2d at 252–53, 256. The court emphasized in *Crandall* that the defendant had been warned as required by sec. 343.305(3)(a). Police read the "Informing the Accused Form" to the defendant which made clear license revocation would result if she refused to submit to the chemical test. Because she had been so advised, the court reasoned that it was clear to the defendant that " 'refusing the test was not a "safe harbor," free of adverse consequences.'" *Id.* at 255, *quoting South Dakota v. Neville,* 459 U.S. 553 (1983). There was no implicit assurance that driver license revocation would be the only adverse consequence of refusal. *Id.* The court noted that in the circumstances of the case, due process required no more than that the warnings of sec. 343.305 be given the defendant. Once appropriately advised there was no constitutional impediment to using the fact of refusal in the subsequent prosecution for operating while intoxicated.

The same due process considerations operating in *Crandall* lead this court to conclude that the fact of

50

refusal cannot be used in a subsequent trial involving operating a motor vehicle while intoxicated if the defendant has not been duly advised under sec. 343.305(3)(a), Stats. If the defendant is not fully informed, particularly concerning the penalty for refusal, the reasonable inference that refusal reflects consciousness of guilt is substantially weakened. *See generally Bolstad,* 124 Wis. 2d at 585–86. Thus, to obtain the benefit of using refusal evidence in the criminal prosecution for the substantive offense involving intoxicated use of a vehicle, police must provide the warnings set forth in sec. 343.305.

However, even though failure to advise the defendant as provided by the implied consent law affects the State's position in a civil refusal proceeding and results in the loss of certain evidentiary benefits, e.g., automatic admissibility of results and use of the fact of refusal, nothing in the statute or its history permits the conclusion that failure to comply with sec. 343.305(3)(a), Stats., prevents the admissibility of legally obtained chemical test evidence in the separate and distinct criminal prosecution for offenses involving intoxicated use of a vehicle. Such a holding would lead to an absurd and unreasonable result. This court has repeatedly stated that it must interpret statutes to avoid absurd or unreasonable results, *e.g., DeMars,* 123 Wis. 2d at 372, and it must harmonize conflicting statutes and provisions to give each reasonable effect, *e.g., Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815 (1979). In light of the clearly articulated intent of the legislature in enacting sec. 343.305, *supra* p. 8, and the absence of explicit legislative direction to suppress chemical test evidence for noncompliance with sec. 343.305(3)(a), it would be absurd to infer that

51

the legislature intended that critical evidence in a felony homicide must be excluded for failure to comply with the procedures set forth in a chapter entitled "Operators' Licenses" and a section dealing with civil license revocation actions. To so hold would give greater rights to an alleged drunk driver under the fourth amendment than those afforded any other criminal defendant. *See Scales,* 64 Wis. 2d at 493–94 ("It is not our understanding, however, that the implied consent law was intended to give greater rights to an alleged drunken driver than were constitutionally afforded theretofore."); *accord State v. Baker,* 502 A. 2d 489 (Me. 1985) (there is no implicit legislative intention to exclude blood test results obtained in violation of the implied consent law but in compliance with constitutional requirements); *see generally Schmerber v. California,* 384 U.S. 757, 766–72 (1966) (warrantless seizure of blood sample is constitutional under the fourth amendment if probable cause and exigent circumstances exist); *see also* Thomas J. Hammer, *The New OMVWI Law: Wisconsin Changes Its Approach to The Problem of Drinking and Driving,* 55 Wis. Bar. Bull., No. 4 at 10 (April 1982). Hence, we hold that if evidence is otherwise constitutionally obtained, there is nothing in the implied consent law which renders it inadmissible in a subsequent criminal prosecution. Chemical test evidence may be otherwise legally obtained if it is seized pursuant to a valid search warrant, *Schmerber,* 384 U.S. at 770, incident to a lawful arrest, *Scales,* 64 Wis. 2d at 493, under exigent circumstances supported by probable cause to arrest, *Schmerber,* 384 U.S. at 769–71, or with the consent of the driver, *cf. State v. Fillyaw,* 104 Wis. 2d 700, 716–18, 312 N.W.2d 795 (1981) (a warrant is not required for a blood sample if the defendant voluntari-

ly consents to the seizure); *accord City of Bismarck v. Hoffner,* 379 N.W.2d 797, 799 (N.D. 1985) (procedural requirements of implied consent statute do not apply where actual consent is given or sought.).

We note that other jurisdictions have reached the same conclusion concerning the application and effect of the implied consent law. *E.g., State v. Hartman,* 256 N.W.2d 131, 134–36, (S.D. 1977) (failure to comply with implied consent provision requiring police to advise defendant of right to refuse test does not render blood sample inadmissible at subsequent criminal prosecution, but driver's license cannot be revoked for refusing to submit to test and State may not invoke favorable statutory presumptions concerning test admissibility); *accord Tyler v. Com'r of Public Safety,* 368 N.W.2d 275 (Minn. 1985) (Purpose of the implied consent law is not subverted by the admission in a criminal negligence prosecution of a blood test obtained in violation of the law's procedures, but compliance with the law is a prerequisite to license revocation for refusing to take a chemical test as provided under the law.); *see also State v. Abrahamson,* 328 N.W.2d 213, 215 (N.D. 1982) (proceeding under the implied consent law is separate and distinct from the criminal proceeding for an offense involving intoxicated use of a vehicle).

Zielke contends that if the court concludes the implied consent law is only one of several alternative means for lawfully obtaining chemical test evidence the implied consent law will rarely, if ever, be followed in drunk driving cases. We disagree. We believe the construction of the implied consent law set forth today provides sufficient incentives for police to follow the statute without also requiring the exclusion of critical and highly probative evidence. *See Hart-*

53

*man,* 256 N.W.2d at 135. As previously explained, when law enforcement officers fail to comply with the implied consent statute the driver's license cannot be revoked for refusing to submit to chemical tests. Furthermore, if the procedures of sec. 343.305, Stats., are not followed the State cannot rely on the favorable statutory presumptions concerning the admissibility of chemical-test results set forth in sec. 343.305(7). In addition, the fact of refusal cannot be used in a subsequent criminal prosecution for drunk driving as evidence of the driver's consciousness of guilt. *Crandall,* 133 Wis. 2d at 257. Finally, law enforcement officers are well advised to comply with the procedures of the implied consent law as a means of avoiding potential due process and fourth amendment violations. *See Schmerber,* 384 U.S. at 760 n. 4, 772.

Even though warrantless blood seizures have been considered constitutionally permissible since the *Schmerber* decision over two decades ago, we note that constitutional constraints still exist post-*Schmerber. See* 74 Op. Att'y Gen. 123, 127–29 (any attempt to use physical restraint to take a blood sample is subject to fourth amendment limits on reasonable searches and seizures and must comply with due process requirements of the fourteenth amendment); Special Wisconsin Attorney General Memorandum, *Chemical Tests for Intoxication Without Consent* (August 1, 1966). We agree with the *Schmerber* court that "[t]he integrity of an individual's person is a cherished value of our society. ... [and permitting minor intrusions] under stringently limited conditions in no way indicates that ... substantial intrusions ..." are permitted. *Schmerber,* 384 U.S. at 772. We caution that the constitutional foundation of warrantless chemical evidence searches could give way if the "police initiated the

violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." *Id.* at 760 n. 4.

We believe that rather than foregoing the benefits just enumerated, law enforcement officers will in most instances proceed in compliance with the implied consent statute. Ample incentives exist, as outlined in this opinion, to ensure that in the normal case involving operation while under the influence of an intoxicant the police will comply with the procedures of the implied consent law. We agree with the State's conclusion that noncompliance with the procedures of sec. 343.305(3)(a), Stats., will likely occur only in a limited number of cases such as this case involving felony drunk driving. In such cases the State might, depending on the circumstances, be willing to forego civil license revocation procedures against the driver under sec. 343.305(3) and the other advantages outlined here, because the need for reliable chemical test evidence is so great.

We acknowledge that in *State v. McCrossen,* 129 Wis. 2d 277, 385 N.W.2d 161 (1986) this court approved suppression of a blood alcohol test in a driving while intoxicated prosecution. In that case, unlike the instant case, the defendant, who was arrested for operating under the influence contrary to sec. 346.63(1)(a), Stats., specifically asked the arresting officer who administered the breathalyzer test if she could have another test, either blood or urine, because she did not believe the results of the first test. The police told the defendant she would have to pay for any alternative test, which is contrary to sec. 343.305(5). The defendant agreed but the police never administered the requested alternative test. In addition, she was never informed by police that she could

be released in order to get an alternative test. In fact, though a friend arrived ready to post bail, she was not released until hours later. On those facts, suppression was an appropriate remedy, but it is by no means required by the implied consent law. While the facts in *McCrossen* support the court's act of discretion in ordering suppression in that case, the facts in this case do not.

The implied consent law is an important weapon in the battle against drunk driving in this State. Neither the law, its history or common sense allows this court to countenance its use as a shield by the defense to prevent constitutionally obtained evidence from being admitted at trial.

*By the Court.*—The decision of the court of appeals is reversed.