COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2185-CR**

Cir. Ct. No. **2017CT344**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

STEVEN L. STERNITZKY,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Portage County: THOMAS T. FLUGAUR, Judge. *Affirmed.*

¶1 NASHOLD, J.[1] Steven Sternitzky appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration, third

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

offense. He challenges the circuit court's denial of his suppression motion, arguing that his warrantless arrest was not based on probable cause. Sternitzky also argues that the circuit court improperly instructed the jury with respect to the presumption of intoxication and the automatic admissibility of test results, set forth in WIS JI—CRIMINAL 2669. For the reasons set forth below, I affirm.

## BACKGROUND

¶2    On November 19, 2017, at approximately 1:00 a.m., Deputy Robert Hamilton of the Portage County Sheriff's Department was on routine patrol when he observed a pickup truck proceeding toward him on County Road HH. Hamilton ran the plate and learned that the registered owner, Sternitzky, had a suspended driver's license. As a result, Hamilton stopped Sternitzky's vehicle and approached Sternitzky, the driver. The interaction between Hamilton and Sternitzky was recorded on the squad car's dashboard camera (dashcam).

¶3    Sternitzky admitted to Hamilton that his license was suspended. At the suppression hearing, Hamilton testified that, while speaking with Sternitzky, Hamilton detected the odor of alcohol on Sternitzky, despite the smell of smoke coming from the cigarette that Sternitzky was smoking. He also testified that Sternitzky "clumsily dropped" his cigarette onto the ground and picked it back up. Hamilton asked Sternitzky how much he had had to drink, and Sternitzky stated that he had consumed "a couple" of wines,[2] with the last drink approximately 30 to 45 minutes prior to the stop. Hamilton testified that a "very, very large

---

[2] The dashcam recording indicates that Sternitzky initially stated that he had "a couple" of wines. Hamilton, the circuit court, and the State translate "a couple" to mean two.

percentage" of the motorists he has arrested for operating a motor vehicle while intoxicated (OWI) initially claimed to have consumed only about two drinks.

¶4      Hamilton returned to his squad car, confirmed that Sternitzky's operating privileges were suspended, and also learned that Sternitzky had two prior convictions for OWI.  Hamilton asked Sternitzky if he would step back toward Hamilton's squad car in order to perform field sobriety tests, and Sternitzky agreed.  While standing in front of the squad car, Hamilton questioned Sternitzky further about how much alcohol he had consumed that evening.  Hamilton stated that he had consumed "three wines" but eventually acknowledged that he had consumed "six" wines.

¶5      Hamilton then conducted field sobriety tests.  Sternitzky showed six out of six clues of intoxication on the horizontal gaze nystagmus (HGN) test.  He exhibited one clue out of eight on the walk-and-turn test and one clue out of four on the one-legged-stand test.

¶6      After completing the field sobriety tests, Hamilton conducted a preliminary breath test (PBT), which reflected a result of .134.  Sternitzky was placed under arrest, and a subsequent blood test revealed a blood alcohol concentration of .140.  Sternitzky was charged with operating a motor vehicle while under the influence of an intoxicant, third offense, and operating a motor vehicle with a prohibited alcohol concentration, third offense.

¶7      Prior to trial, Sternitzky filed a motion to suppress the evidence derived from an "unlawful arrest."  In his motion, Sternitzky argued that:  (1) there was no probable cause for his warrantless arrest; (2) the PBT result should be excluded from the probable cause analysis because Hamilton did not make a "request" of Sternitzky to voluntarily submit a breath sample using the PBT; and

(3) Hamilton did not have probable cause to request a PBT. Following an evidentiary hearing and review of the dashcam recording, the circuit court denied Sternitzky's motion to suppress.

¶8 Sternitzky then filed another motion, this time seeking to suppress his blood test results on the ground that the Informing the Accused form that Hamilton read to Sternitzky prior to the blood draw (which tracked WIS. STAT. § 343.305(4)) "contained language which violated the defendant's constitutional right to refuse a blood draw." Following the State's response and a hearing, the circuit court determined that the Informing the Accused form that was read to Sternitzky properly informed him of his rights and did not violate Sternitzky's Fourth Amendment rights. The court therefore denied the motion to suppress the blood test results.

¶9 The charges against Sternitzky were tried to a jury. At the close of evidence, during a discussion on jury instructions, Sternitzky objected to the presumption of intoxication and automatic admissibility language included in WIS JI—CRIMINAL 2669. He argued that the jury instruction should not be given because the State had not provided evidence to the jury that Sternitzky was read the Informing the Accused form. The court rejected Sternitzky's argument, and the instruction from WIS JI—CRIMINAL 2669 was given.

¶10 The jury convicted Sternitzky of operating a motor vehicle with a prohibited alcohol concentration, but acquitted him of operating a motor vehicle while under the influence of an intoxicant. A judgment of conviction was entered for operating a motor vehicle with a prohibited alcohol concentration, third offense, and the court sentenced Sternitzky to 50 days in jail, which was stayed

pending this appeal. Additional facts are set forth as needed in the discussion section below.

## DISCUSSION

¶11 Sternitzky makes two primary arguments on appeal. First, he argues that Hamilton did not have probable cause to arrest him and that the PBT results may not be used in determining whether there was probable cause for the arrest. Second, he contends that the court erred in providing WIS JI—CRIMINAL 2669, "How to Use the Test Result Evidence," because there was no testimony from the arresting officer presented during the trial that Sternitzky was read the Informing the Accused form. I address each of these arguments in turn.

### I. Probable Cause for Arrest

¶12 "A warrantless arrest is not lawful except when supported by probable cause." *State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551. "The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances." *Id.*, ¶20. "Probable cause to arrest requires evidence that would lead a reasonable police officer to believe that the person to be arrested has committed or is committing a crime." *State v. Secrist*, 224 Wis. 2d 201, 214, 589 N.W.2d 387 (1999). For an officer to arrest based on probable cause, "the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." *Id.* at 212.

¶13 On review, this court will uphold the circuit court's findings of fact unless they are clearly erroneous. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999). Whether those facts satisfy the standard of probable cause is a question of law that this court reviews de novo. *Id.*

¶14    Sternitzky argues that his warrantless arrest was not based on probable cause and that therefore the evidence it produced should have been suppressed.  I conclude that the circuit court properly rejected this argument.  At the time Hamilton arrested Sternitzky, he was aware of the following facts.  First, while speaking with Sternitzky, Hamilton could smell alcohol on Sternitzky, despite the smell of smoke from Sternitzky's cigarette.  Second, Sternitzky himself admitted to consuming six glasses of wine during that evening, with the last drink approximately 30 to 45 minutes prior to the traffic stop.  Third, Sternitzky's admission that he had consumed six glasses of wine came only after he had misrepresented the amount he had consumed that night, first stating that he had consumed only a couple of wines, and then asserting that it was three.  *Cf. Secrist*, 224 Wis. 2d at 217 n.10 (lying to police, which evidences consciousness of guilt, may support probable cause).

¶15    Fourth, Sternitzky exhibited six out of six clues of intoxication for one of the field sobriety tests, the HGN test, and, according to Hamilton's undisputed testimony, four clues show a significant probability of intoxication. Sternitzky also showed one clue out of eight on the walk-and-turn test and one clue out of four on the one-legged-stand test.  Although Hamilton testified that two clues on these tests are required to show a significant probability of intoxication, he also testified that he had seen a lot of "very heavily impaired" people do well on the walk-and-turn and the one-legged-stand tests but do poorly on the HGN test.  The officer's experience is a consideration in determining whether probable cause supported an arrest.  *See Lange*, 317 Wis. 2d 383, ¶¶23, 30.

¶16    Fifth, Sternitzky "clumsily dropped" his cigarette on the ground, exhibiting a lack of coordination.  Sixth, the stop occurred at 1:00 a.m.  *See id.*, ¶¶23, 32 (time of night is relevant to determination of probable cause to arrest for

OWI); *see also* **State v. Post**, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d 634. Seventh, Officer Hamilton knew that Sternitzky had two prior OWI convictions. *See Lange*, 317 Wis. 2d 383, ¶33 (prior OWI convictions may be taken into account when determining whether officer had probable cause to believe that defendant was under the influence of an intoxicant while operating vehicle). Finally, as discussed in more detail below, the result of the PBT was .134, well over the .08 limit.

¶17     Sternitzky argues that the results of the PBT should not be considered in determining whether Hamilton had probable cause to arrest him for OWI.  He bases this assertion on two premises.  First, he contends that Hamilton did not have probable cause to request a PBT, as required by WIS. STAT. § 343.303.[3]  This argument is easily rejected.  Based on the evidence set forth above, Hamilton clearly had the level of probable cause required to request a PBT. *See Renz*, 231 Wis. 2d at 315-16 (probable cause required to request PBT is quantum of proof greater than reasonable suspicion necessary to justify

---

[3]  This provision states, in relevant part:

> **343.303   Preliminary breath screening test.**   If a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63(1) …, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose.  The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of s. 346.63(1) … and whether or not to require or request chemical tests as authorized under s. 343.305(3).   The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3).

investigative stop and greater than the "reason to believe" necessary to request PBT from a commercial driver, but less than level of proof required to establish probable cause for arrest).

¶18    Second, Sternitzky argues that the results of the PBT should not be considered in determining whether probable cause supported his arrest because the officer did not follow the protocol of WIS. STAT. § 343.303, which, among other things, authorizes the admission of PBT results to show probable cause for an arrest if the arrest is challenged.  Specifically, Sternitzky argues that, pursuant to § 343.303, an officer must "request," rather than require, a breath sample for the PBT, and that a "request" under § 343.303 means that the officer must seek and obtain consent.  In support of his argument that Hamilton did not "request" that Sternitzky provide a breath sample for the PBT, Sternitzky relies on the following exchange between Hamilton and Sternitzky following completion of the field sobriety tests:

> [HAMILTON:]  One more test.  [Hamilton briefly responds to dispatch and then shows Sternitzky the PBT.]  As you can see this is registering no alcohol at this time.  Do you have anything in your mouth at all?
>
> [STERNITZKY:]  No.
>
> [HAMILTON:]   Let me take a look real quick.  [Hamilton shines flashlight into Sternitzky's mouth.]  What you're going to do for this test, is just take a deep breath, blow long and steady through the tube.  Okay?  [Tube is inserted.]  Blow, blow, blow, blow ….

¶19    When asked by defense counsel at the suppression hearing if Hamilton had asked Sternitzky for his consent prior to administering the PBT, Hamilton testified:

> I didn't straightforward in a straightforward manner, say will you, or will you not. I said—I showed him the PBT. I showed him it was registering no alcohol. I said what I would need him to do is blow long and steady through the tube. And I said, okay? And he agreed, and said okay.

Despite Hamilton's testimony that Sternitzky responded with "okay," this response cannot be heard on the dashcam recording. Moreover, the circuit court found that, unlike the verbal affirmative response given by Sternitzky when Hamilton asked Sternitzky to submit to field sobriety tests, Sternitzky did not give a verbal affirmative response with respect to the PBT. Nevertheless, the court determined that Hamilton's use of the word "okay" indicated that he was making a request of Sternitzky, and the court further concluded that Sternitzky voluntarily submitted to the test.

¶20 Sternitzky argues that the circuit court's interpretation of Hamilton's statement as a request rather than a directive was "clearly erroneous," which suggests that he believes this determination involves a question of fact that is subject to a deferential standard of review. Regardless of whether our review is deferential or de novo, I conclude that, under the specific facts of this case, the circuit court properly determined that Hamilton requested rather than required Sternitzky to submit to the PBT. I also find no error in the circuit court's conclusion that Sternitzky consented to the PBT. As the circuit court stated in reaching its conclusion, no particular script is required when making a request for a PBT. In addition, as demonstrated by the dashcam recording, the intonation of Hamilton's "Okay?" supports the court's conclusion that Hamilton was making a request rather than issuing a command. I also note that the dashcam recording reveals no use of threats or a threatening voice on Hamilton's part.

¶21     Moreover, there were at least two other instances in which Hamilton added "okay?" at the end of a sentence and where Sternitzky, by virtue of his response, suggested that he understood Hamilton to be posing a question. For example, in asking Sternitzky to submit to the field sobriety tests, the officer stated: "Why don't you step back by my car here. I'm just going to run you through some field sobriety tests real quick. Okay?" Sternitzky responded: "No problem."[4] Likewise, following administration of the PBT, when Hamilton explained to Sternitzky that he was going to place Sternitzky under arrest for OWI, Hamilton again ended the sentence with "okay?", to which Sternitzky responded, "Not okay." I conclude that Sternitzky's responses support the conclusion that Hamilton made a request for the PBT and that Sternitzky voluntarily submitted to the test.

¶22     However, I further conclude that, even if Sternitzky were correct that the PBT results were impermissibly obtained and may not be considered in determining whether there was probable cause for Sternitzky's arrest, such a result is of no consequence because, as argued by the State, even without the PBT results, Hamilton had probable cause to arrest Sternitzky for OWI. Probable cause for Sternitzky's arrest was established by Sternitzky's admission to consuming six glasses of wine over the course of the evening; his initial evasiveness regarding how much alcohol he had consumed; the odor of intoxicants on his person, which was noticeable despite the interference from cigarette smoke; his prior OWI convictions; his performance on the field sobriety tests; his clumsiness in dropping his cigarette; and the time of day of the stop (approximately 1:00 a.m.).

---

[4] The circuit court stated that Sternitzky responded with "fine"; however, the dashcam recording indicates that his precise words were "no problem."

10

¶23     Based on the foregoing, I reject Sternitzky's argument that Hamilton lacked probable cause for the arrest.[5]

## II. WIS JI—CRIMINAL 2669

¶24     Sternitzky contends that the court erred in giving the jury the following instruction from WIS JI—CRIMINAL 2669, "How to Use the Test Result Evidence":

> The law states that the alcohol concentration in a defendant's blood sample taken within three hours of driving a motor vehicle is evidence of the defendant's alcohol concentration at the time of the driving. If you are satisfied beyond a reasonable doubt that there was .08 grams or more of alcohol in 100 milliliters of the defendant's blood at the time the test was taken, you may find from that fact alone the defendant was under the influence of an intoxicant at the time of the alleged driving or that the defendant had a prohibited alcohol concentration at the time of the alleged driving, or both. But you are not required to do so.
>
> You, the Jury, are here to decide these questions on the basis of all the evidence in this case. And you should not find the defendant was under the influence of [an] intoxicant at the time of the alleged driving or that the defendant had a prohibited alcohol concentration at the time of the alleged driving, or both, unless you are satisfied of that fact beyond a reasonable doubt.

---

[5] Sternitzky also states that the PBT results should not be considered in determining whether there was probable cause for the arrest because "the PBT device was not timely calibrated." That is the extent of Sternitzky's appellate argument on this point. Because this assertion is inadequately developed, I need not consider it. *See* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

In addition, the State argues that, even if Hamilton lacked sufficient probable cause to request the PBT or the request was somehow statutorily deficient, exclusion of the PBT result is not an available remedy. Because I conclude that there was probable cause for the PBT request and that Hamilton requested rather than required the PBT, I need not consider the State's alternative argument.

*See* WIS JI—CRIMINAL 2669.

¶25    Sternitzky argues that the State was not entitled to the automatic admissibility and presumption of intoxication provided for in WIS JI—CRIMINAL 2669 because the State did not provide any evidence at trial that Sternitzky was read the Informing the Accused form.[6]   In making this argument to the circuit court, Sternitzky relied on *State v. Zielke*, 137 Wis. 2d 39, 51, 403 N.W.2d 427 (1987), for its conclusion that failure to follow the procedures of the implied consent law "results in the loss of certain evidentiary benefits," including the "automatic admissibility of results."   The circuit court rejected Sternitzky's argument, concluding that *Zielke* did not support Sternitzky's position and that the issue of whether the Informing the Accused form was read was a pretrial issue rather than an issue for the jury.   On appeal, Sternitzky no longer relies on *Zielke*, but instead cites a concurring opinion in *State v. Piddington*, 2001 WI 24, 241 Wis. 2d 754, 623 N.W.2d 528, which notes that noncompliance with the implied consent law may result in the State "los[ing] the evidentiary benefits of automatic admissibility and the presumption of intoxication specified in Wis. Stat. §§ 343.305(5)(d) and 885.235." *Id.*, ¶67 (Sykes, J., concurring).

¶26    Sternitzky's argument is undeveloped and unsupported.   First, he provides no authority addressing this court's review of a purportedly erroneous jury instruction.   Moreover, the only authorities Sternitzky has cited in support of

---

[6] Sternitzky also argues that the error was not harmless because the jury found him guilty of operating with a prohibited alcohol concentration while finding him not guilty of operating while under the influence of an intoxicant.   Because Sternitzky has not shown that the circuit court erred in instructing the jury, I need not consider whether any error was harmless. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (this court need not address all issues raised when deciding case on other grounds).

his position are *Zielke* and *Piddington*, neither of which support his premise that, even when a defendant is read the Informing the Accused form, the State is not entitled to the automatic admissibility and presumption of intoxication provisions of the implied consent law or to WIS JI—CRIMINAL 2669 unless the State also presents evidence *to the jury* that the defendant was read the Informing the Accused form.

¶27   Notably, it is undisputed that Sternitzky was read the Informing the Accused form.  In fact, as previously discussed, Sternitzky filed a pretrial motion seeking to suppress his blood test results on the ground that the Informing the Accused form that the officer read to Sternitzky prior to the blood draw "contained language which violated the defendant's constitutional right to refuse a blood draw."  The circuit court denied the suppression motion, concluding that the Informing the Accused form that was read to Sternitzky properly informed him of his rights and did not violate his Fourth Amendment rights.  Sternitzky does not appeal the circuit court's decision on that issue.  Nor does Sternitzky argue on appeal that he was not read the Informing the Accused form.  Rather, his only argument on this point is that, because *the jury* did not hear evidence that Sternitzky was read the Informing the Accused form, the excerpt quoted above from WIS JI—CRIMINAL 2669 was improperly given.

¶28   Because Sternitzky has provided no authority or cogent argument in support of this position, I decline to consider it further.[7]  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court cannot

---

[7]  Notably, Sternitzky has failed to file a reply brief in this case.

13

serve as both advocate and judge and may decline to consider inadequately developed arguments and arguments unsupported by authority).

## CONCLUSION

¶29 Accordingly, the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.