John F. BEST, Jr., Appellant,

v.

STATE of Wisconsin, Department of Transportation, Division of Motor Vehicles, Respondents.

Court of Appeals

*No. 80–413. Argued September 24, 1980.—*
*Decided November 10, 1980.*
(Also reported in 299 N.W.2d 604.)

For the appellant there was a brief and oral argument by *George N. Kotsonis* of *Chronus and Kotsonis* of Milwaukee.

For the respondents there was a brief by *Bronson C. La Follette,* attorney general, and *Albert O. Harriman,* assistant attorney general. Oral argument by *Mr. Harriman.*

Before Voss, P.J., Brown and Scott, J.J.

SCOTT, J. Best appeals from the circuit court's judgment affirming the amended order of the Division of Motor Vehicles suspending for six months Best's probationary license to drive. We reverse on the ground that the State did not afford Best the requirements of procedural due process in that it failed to promulgate ascertainable standards for the exercise of administrative discretion in determining the length of license suspensions.

Even though the six-month license suspension has expired, we do not dismiss this appeal as being moot. The "great weight of authority supports the proposition that an appellate court may retain an appeal for determination if it involves questions of public interest even though it has become moot as to the particular parties involved." *Mueller v. Jensen,* 63 Wis.2d 362, 366–67, 217 N.W.2d 277, 279 (1974). Constitutional questions have been held to be of sufficient public importance to justify considering an action as not being moot. *Doering v. Swoboda,* 214 Wis. 481, 488, 253 N.W. 657, 659 (1934). The constitutional issue in this case is one that is likely to arise again. We will, therefore, decide this case on its merits.

The issue in this case is whether the State has provided constitutionally adequate procedures for suspending the license of a driver who has accumulated a sufficient number of demerit points under the administrative rules promulgated by the Division of Motor Vehicles to warrant license suspension.

Under sec. 343.085(3), Stats.,[1] the Secretary of the Department of Transportation has the authority to suspend a person's probationary license when that person has been assigned a sufficient number of points for convictions of traffic violations. Probationary licenses are given to first-time licensees. The statutes provide no limit for the length of time a person's license may be suspended.

Section 343.085(5), Stats.,[2] authorizes the secretary to adopt a point system which weighs traffic convictions by their seriousness for the purpose of determining when to suspend a person's probationary license. Section 343.-32(2)(a), Stats.,[3] authorizes the secretary to adopt such

[1] Section 343.085(3), Stats., provides:

(3) The secretary may suspend a person's operating privilege under this section when such person has been assigned sufficient demerit points after conviction for traffic violations to require suspension under the rule adopted under sub. (5) and either holds a license issued under this section or by age comes under this section. The secretary may revoke such a person's operating privilege under this section if such person has a previous suspension under this section.

[2] Section 343.085(5), Stats., provides:

(5) For the purpose of determining when to suspend or to continue a person on probationary status, the secretary may determine and adopt by rule a method of weighing traffic convictions by their seriousness and may change such weighted scale from time to time as experience or the accident frequency in the state makes necessary or desirable. Such scale may be weighted differently for this licensee than the scale used to determine revocations under s. 343.32.

[3] Section 343.32(2)(a), Stats., provides:

(2)(a) The secretary may suspend or revoke a person's operating privilege if the person appears by the records of the department to be an habitually reckless or negligent operator of a motor vehicle or to have repeatedly violated any of the state traffic laws or any local ordinance enacted under ch. 349. For the purpose of determining when to suspend or revoke an operating privilege under this subsection, the secretary may determine and adopt by rule a method of weighing traffic convictions by their seriousness

a point system for determining when to suspend or revoke a person's operating license.

Pursuant to sec. 343.32(2)(a), Stats., the secretary adopted a point system which weighs traffic convictions by their seriousness and further adopted the following rule:

(2) The division may suspend or revoke the operating privileges of any person when his driving record shows he has attained or accumulated 12 points in 12 months or 18 points in 24 months or 24 points in 36 months except any person who holds a probationary license or any unlicensed person who would have been issued a probationary license had he made application and met all other requirements for license and who has not had his operating privilege previously suspended or revoked shall have his operating privilege suspended.

Wis. Adm. Code sec. MVD 11.05(2) (now partially incorporated in sec. 343.32(2)(c), Stats., by Laws of 1979, ch. 221, §769t, effective April 30, 1980).

The secretary has not adopted any rule providing for a pre-suspension or post-suspension hearing, nor has he adopted any rule setting forth the length of time for which a person's license may be suspended once the minimum number of points for suspension has been accumulated.

On August 24, 1979, the Division of Motor Vehicles ordered Best's probationary license be suspended for a period of two months beginning August 24 because the Division's records showed Best had accumulated thirteen demerit points for convictions of three traffic violations that occurred on February 21, March 9 and June 6, 1979. On October 30, 1979, the Division of Motor Vehicles issued Best an amended order suspending his license for a period of six months beginning August 24 because its records showed Best had accumulated nineteen points—

and may, subject to the limitations in this subsection, change such weighted scale as experience or the accident frequency in the state makes necessary or desirable.

the thirteen points mentioned above, plus six points for conviction of a traffic violation which occurred on September 22, 1979. Neither the order nor the amended order notified Best that he had a right to request a hearing under sec. 227.064 or sec. 343.33, Stats., nor did the orders furnish any reason for the two-month or amended six-month term of the suspension.

Best did not request the Division of Motor Vehicles to provide him a hearing. Pursuant to sec. 343.40, Stats., and ch. 227, Stats., Best petitioned the circuit court to review the Division of Motor Vehicles' amended order and argued that he had been deprived of procedural due process and of the equal protection of the laws. The circuit court found no constitutional violation and affirmed the Division of Motor Vehicles' order. Best makes essentially three arguments on appeal.

## PRE-SUSPENSION HEARING

Best's first argument is that the fourteenth amendment requires the Division of Motor Vehicles to provide him a hearing before it suspends his license. He relies on *Fuentes v. Shevin*, 407 U.S. 67 (1972), in which the United States Supreme Court stated, in the context of a seizure of goods under a writ of replevin, that it is "fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Id.* at 80.

The Supreme Court has further held in particular cases involving deprivation of property other than a writ of replevin that the property interest in those cases is not so great as to require a hearing prior to adverse administrative action. One such case, *Dixon v. Love*, 431 U.S. 105 (1977), involved revocation of a driver's license due to the driver's accumulation of a sufficient number of demerit points under an Illinois point scheme. In *Dixon*, the Supreme Court stated:

[A] driver's license may not be so vital and essential as are social insurance payments on which the recipient may depend for his very subsistence. The Illinois statute includes special provisions for hardship and for holders of commercial licenses, who are those most likely to be affected by the deprival of driving privileges. . . . We therefore conclude that the nature of the private interest here is not so great as to require us "to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action."

*Id.* at 113 (citations omitted).

In *Dixon*, the Supreme Court further concluded that the risk of erroneous deprivation of property in the absence of a prior hearing was not great and that the substantial public interest in administrative efficiency would be impeded by the availability of a pre-termination hearing in every license revocation case.

We hold that the State is not constitutionally required to furnish a hearing prior to ordering the suspension of a driver's license due to the driver's accumulation of demerit points for convictions of traffic offenses. The driver has an opportunity for a full judicial hearing in connection with each of the traffic convictions on which the suspension is based. The Division of Motor Vehicles' decision to suspend is largely automatic after the driver has been convicted. Further, the State has an interest in keeping off the roads those drivers who are unable or unwilling to respect traffic laws and in avoiding the delay of full administrative hearings.

### ADEQUATE STANDARDS

Best's second argument is that because the State is not required to suspend a driver's license upon the

driver's accumulation of at least twelve points in one year and because the State is not limited by statute or by promulgated rule in determining the length of suspension, the State's suspension procedure is constitutionally infirm.

Although sec. 343.085(3), Stats., provides that the secretary "may" suspend and not that the secretary "shall" suspend a driver's probationary license when the driver has been assigned sufficient demerit points, the secretary has not thereby been given discretion to arbitrarily and capriciously decide when to suspend a license. In *Schmidt v. Dept. of Local Affairs & Development,* 39 Wis.2d 46, 158 N.W.2d 306 (1968), the plaintiff argued that sec. 66.016(1), Stats., which provided that the "director *may* approve for referendum only those proposed incorporations which meet the following requirements . . ." (emphasis added), constituted an invalid delegation of legislative power to the director. The court stated:

To say that the director has absolute discretion to deny any petition simply because he "may" not grant those which fail to meet the requirements is not a reasonable construction to place on the statute and is reading the word "may" out of its statutory context. While the statute may give to the director some discretion, it does not give him authority to reject a petition arbitrarily, capriciously or without reason.

*Id.* at 53, 158 N.W.2d at 310.

As to the necessity of ascertainable standards for the exercise of administrative discretion, it has been stated:

It hardly need be said that the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse. See *Hornsby v. Allen,* 326 F.2d 605, 609–610 (5 Cir. 1964) [concerning the due process requirement that a Board of Aldermen must establish ascertainable standards in determining to whom should be granted a

liquor license]. For this reason alone due process requires that selections among applicants be made in accordance with "ascertainable standards," . . . .

*Holmes v. New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir. 1968).

We hold that due process requires the State to promulgate standards for the exercise of administrative discretion in determining the length of license suspensions. Without such standards, the State can easily abuse its discretion in setting suspensions. For example, the State might suspend for six months the license of a driver who had accumulated nineteen points in twelve months but suspend for only four months the license of one who had accumulated twenty-five points in the same period of time. While we do not suggest the State has abused its discretion in the case of Best or any other driver, we conclude that the exercise of discretion must be within ascertainable standards. As far as this court can determine from the record, the State presently has no ascertainable standards at all.

At oral argument before this court, the State admitted it had standards but maintained it was not required to make them known either to drivers or to this court. Having such standards is not enough. They must be made available to suspended drivers so the drivers and the courts can insure that the State reasonably adheres to them and to insure that the standards themselves meet constitutional requirements.

Our holding is supported by *Calabi v. Malloy,* 438 F. Supp. 1165 (D. Vt. 1977). In *Calabi,* drivers whose licenses were suspended argued that the procedures administered by the Commissioner of the Vermont Department of Motor Vehicles in determining the length of suspensions were fatally flawed because of a lack of ascertainable standards. The district court stated:

We have no doubt that standards or rules are most useful when the person whose conduct must conform to them or whose punishment is gauged by them knows what they are. Standards are weakened by generality and lack of enforcement. Furthermore, they will be most effective when they are applied even-handedly. It does not follow, however, that if the guidelines in question are not widely publicized or are not unerringly utilized, we must declare the statute under which they are promulgated unconstitutional. The purpose of defendant's internal guidelines is to insure that suspensions are imposed on the basis of relative culpability; the defendant must utilize the suspension tool for purposes ranging from specific deterrence of speeders whose prior records indicate that a mere "ticket" and fine did not teach the intended lesson, to ridding the highways of bona fide menaces whose continued operation of motor vehicles constitutes a threat to public safety. To take full advantage of the deterrent effect of license suspensions, and to further minimize the possibility of arbitrary application or error, publication and dissemination of the guidelines would be a logical and salutary step for the Commissioner to take; however, we are not prepared to hold that his failure to do so constitutes a denial of due process.

Because we find that the Commissioner's guidelines are reasonably specific and ascertainable and prescribe suspensions which are both within the statutory maximum and within normally acceptable limits, we hold that the statutory scheme does not unconstitutionally fail to provide standards for the exercise of administrative discretion.

*Id.* at 1174 (citations omitted).

In *Calabi v. Conway,* 468 F. Supp. 76 (D. Vt. 1978), on a motion to alter or amend the judgment and for a rehearing in the above case, the court, on the basis of a stipulation of the parties, ordered the publication and dissemination of the administrative criteria for license suspensions. The court expressly withheld its judgment as to the constitutionality of the criteria.

In the present case, unlike *Calabi,* the State's standards are not "reasonably ascertainable." They are to-

tally unascertainable and for that reason violate due process.

The State defends its failure to promulgate its standards for determining the length of suspensions by arguing that the Division of Motor Vehicles makes judgment decisions just as a court does. The State contends that since no written standards govern a court when, under sec. 343.30(1), Stats., the court suspends a driver's operating privileges for up to one year for a traffic violation, the Division of Motor Vehicles similarly should be permitted to suspend a driver's license without having to promulgate its standards for determining the length of suspensions. The State's argument conveniently ignores the essential difference between a court's judicial determination of the length or severity of a penalty and the Division of Motor Vehicles' administrative determination of the length of a suspension. The court has present before it the defendant himself as well as the facts and arguments forwarded by the defendant affecting the penalty determination. The Division of Motor Vehicles has before it nothing except court records of traffic convictions. These very great differences in procedure demand that the Division of Motor Vehicles be treated very differently than a court, and they furnish additional reasons for the promulgation of the standards used in mechanically setting the length of license suspensions.

## EQUAL PROTECTION

Best's third argument is that the State's demerit point scheme denies him equal protection of the laws in that it permits a driver whose license has been revoked to obtain an occupational license but does not permit a driver whose license has been merely suspended to obtain such a license. This claim is rendered moot by the legisla-

ture's enactment of Laws of 1979, ch. 316 (effective May 18, 1980), amending sec. 343.10, Stats. (1977), to provide that a person whose license has been suspended may obtain an occupational license. A case is moot when a determination is sought upon some matter which, when rendered, cannot have any practical legal effect upon a then existing controversy. *Milwaukee Police Association v. City of Milwaukee,* 92 Wis.2d 185, 189, 285 N.W.2d 138, 140 (1979). Any declaration by this court as to the constitutionality of the different treatment accorded by sec. 343.10, Stats. (1977), to suspended licensees and revoked licensees would have no practical effect upon the present case.

Furthermore, the equal protection issue is unlikely to arise again. We consider this issue to be of insufficient public importance, unlike the issue of the constitutionality of the Division's suspension procedure which we discussed earlier in this opinion.

Our disposition of this case requires that the amended order of the Division of Motor Vehicles suspending Best's driving privileges be vacated.

*By the Court.*—Judgment reversed and cause remanded with directions to vacate the agency's order.