PHILIP J. FREEBURG, District Attorney Langlade County
You have requested my opinion on several issues relating to the timeliness of and standards for staying the evidentiary hearing afforded to individuals who have requested the opportunity to litigate the lawfulness of their refusal to submit to chemical testing under the implied consent law. Sec. 343.305, Stats. Paraphrasing your questions, you ask:
1. When should the refusal hearing be held?
 2. Can the refusal hearing be stayed until after the trial on the substantive operating while intoxicated ("OWI") charge?
 3. If the refusal hearing can be stayed until after the substantive OWI trial, is the issue of self-incrimination a proper ground for such a stay?
 4. In order to grant a stay, must an individual meet a standard of an "actual and/or substantial possibility of self-incrimination?"
 5. Is it necessary and/or allowable for a prosecutor to replace the privilege of self-incrimination with a grant of immunity in order to hold the refusal hearing prior to the substantive OWI trial?
Your request is apparently prompted by a recent determination by the circuit court in your county to stay a refusal hearing until after the trial for the substantive OWI charge in order to protect an individual's fifth amendment privilege against self-incrimination. The argument favoring that determination would appear to be that the holding of a refusal hearing prior to the trial for the substantive *Page 5 
OWI charge violates an individual's fifth amendment constitutional right against self-incrimination by forcing him/her either to waive that right or to forfeit his/her due process right to meaningful participation in the refusal hearing.
In my opinion, an individual's fifth amendment privilege against self-incrimination need not be compromised by his/her testimony elicited at a refusal hearing. Consequently. a circuit court would not be required to stay a refusal hearing for this reason. To resolve a situation similar to the one which inspired your inquiry, it would therefore not be necessary to answer the remaining four questions. However, because the remaining questions involve matters of a recurring nature important to the prosecutors in the state, I choose to give each consideration in this opinion
Before addressing your particular questions, I find it useful to consider the statutory scheme within which the refusal hearing is but one part, as well as the nature and parameters of the refusal hearing itself.
A refusal hearing is "separate and distinct" from an OWI prosecution. Suspension of Operating Privileges of Bardwell,83 Wis.2d 891, 902, 266 N.W.2d 618, 623 (1978). The former is a "special proceeding," civil in nature, State v. Jakubowski,61 Wis.2d 220, 223-24, 212 N.W.2d 155, 156 n. 2 (1973), while the latter may be either a civil or a criminal proceeding depending on whether the defendant has been previously convicted of OWI within a prescribed period of time. Sec. 346.65 (2), Stats. Although they are not unrelated actions, for both arise out of the same basic occurrence, State v. Brooks, 113 Wis.2d 347, 354,335 N.W.2d 354 (1983), the two proceedings are often prosecuted in two different forums. This is particularly true when the substantive OWI is a first offense brought by a municipality, and the corresponding refusal proceeding, as it must, is prosecuted as a state proceeding in the circuit court by the district attorney. Bardwell 83 Wis.2d at 903; see sec. 343.305 (3)(b), Stats.
The issues to be considered at a refusal hearing are strictly limited to those specifically outlined in subsection 343.305
(3)(b)5, Stats. State v. Nordness, 128 Wis.2d 15, 29,381 N.W.2d 300 (1986). Consequently, the scope of the inquiry is limited to the following: *Page 6 
 1. Whether the officer had probable cause to believe that the person violated an impaired driving law and lawfully arrested him or her therefore;
 2. Whether the officer complied with the statutory duty to inform the person about his or her obligations and rights under the implied consent law;
 3. Whether the person refused to submit to testing requested by the officer.
"Reasonableness" of the refusal is not an issue at a refusal hearing. City of Prairie Du Chien v. Evans, 100 Wis.2d 358, 359
n. 2, 302 N.W.2d 61 (Ct.App. 1981).
The narrow view of the issues to be addressed at the refusal hearing also circumscribes the proof required of the prosecution to establish a refusal. First, the quantum of evidence necessary to establish the probable cause element exists when the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that an individual probably committed an impaired driving offense. Nordness, 128 Wis.2d at 35. In analyzing the nature of this proof at a refusal hearing, the Wisconsin Supreme Court has utilized traditional notions of evidentiary analysis to establish probable cause:
 We view the revocation hearing as a determination merely of an officer's probable cause, not as a forum to weigh the state's and the defendant's evidence. Because the implied consent statute limits the revocation hearing to a determination of probable cause — as opposed to a determination of probable cause to a reasonable certainty — we do not allow the trial court to weigh the evidence between the parties. The trial court, in terms of the probable cause inquiry, simply must ascertain the plausibility of a police officer's account.
Nordness, 128 Wis.2d at 36 (citations omitted). Second, the requirement that the prosecution must prove that the accused was informed of his/her obligations and rights as those are identified in the applied consent law is also typically established through the testimony of the officer that a form "informing the accused" was read to the driver and by the introduction of the actual form into evidence. Third, the prosecution must prove that the driver refused to submit to the test. Ordinarily, the refusal is expressed verbally by *Page 7 
the accused, and the prosecutor's burden is discharged by eliciting testimony to that effect from the police officer.[1]
The preliminary background necessary to render the opinion now stated, I turn to the analysis of your specific questions.
Your first two questions require me to address the same issue — the timeliness of the refusal hearing. Section 343.305
fails to state when the refusal hearing should or must be held. Further, there are no other statutory provisions or case law authorities that either require or restrict the refusal hearing to the period of time either before or after the trial on the substantive OWI charge. Consequently, absent any guidelines, the scheduling of a refusal hearing is within the discretion and calendaring possibilities of the court to which it is assigned.
You have suggested several reasons to require the occurrence of the refusal hearing prior to the trial on the substantive OWI charge. Those reasons include: (I) a requirement that the refusal hearing be held within sixty (60) days from the date of the refusal based upon the language of subsection 343.305 (3)(c); (2) a decision on the "reasonableness" of a refusal would be beneficial to the factfinder at the trial of the substantive OWI charge; and (3) a delay in the revocation resulting from a refusal violating section 343.305 violates the "intent and purpose" of the implied consent law. None of those reasons, however, are persuasive.
First, I find no support in subsection 343.305 (3)(c) for the proposition that the refusal hearing should be held within sixty (60) days of the refusal of the chemical test. That subsection provides as follows:
 The receipt given the operator shall clearly state the date of the refusal and shall serve as a driving permit for 30 days from the date of the refusal. If further proceedings or hearings on the refusal issues are necessary, the court shall certify the receipt for additional periods, not to exceed 30 days, until there is a final *Page 8 
determination of whether the person's operating privilege shall be revoked under this section.
(Emphasis added.) This subsection unambiguously provides the circuit courts of this state with the discretion to permit an unlimited number of extensions, as long as no individual extension exceeds thirty days. I do not believe that this subsection restricts those courts to a single thirty (30) day extension. I have been advised that this view of the statute is consistent with the longstanding interpretation and application of the implied consent law by the Wisconsin Department of Transportation. See West Bend Education Association v. WERC,121 Wis.2d 1, 12, 357 N.W.2d 534 (1984), citing Nottelson v. ILHRDepartment, 94 Wis.2d 106, 115-18, 287 N.W.2d 763 (1980). Seealso Chevrolet Division, G.M.C., v. Industrial Comm.,31 Wis.2d 481, 488, 143 N.W.2d 532 (1966).
Second, under earlier versions of the implied consent law, the "reasonableness" of a refusal was an issue to be determined at the refusal hearing. Sec. 343.305 (2)(b)5 (1975), Stats. However, as noted earlier, reasonableness of a refusal is no longer a statutory defense. Evans, 100 Wis.2d at 359 n. 2. The "reasonableness" of a refusal is not an issue enumerated in section 343.305 (3)(b). Therefore, no determination of "reasonableness" would be available for the factfinder at the substantive ()WI trial from a prior refusal hearing.
Third, while it may be argued that a delay in the revocation of an individual who has refused a chemical test may not be within the "intent and purpose" of the implied consent law, the effect of the delay in any particular case is but one of the many factors to be considered by the circuit court within the exercise of its discretion. Without question, the purpose of the implied consent law, including the refusal hearing subsections of section343.305, is to facilitate the identification and immediate removal of intoxicated drivers from the public highways. SeeState v. Nordness, 128 Wis.2d 15, 27 n. 5, 381 N.W.2d 300 (1986);State v. Neitzel, 95 Wis.2d 191, 193, 289 N.W.2d 828 (1980). This purpose is not compromised, however, by entrusting this determination to the discretion of the circuit courts of this state.
With the exception of delay in the imposition of the penalty of revocation, I perceive nothing burdensome upon the state in the delay of a refusal hearing until after the trial on the substantive *Page 9 
OWI charge. Despite the lack of a prior refusal hearing, the evidence of a refusal to submit to a chemical test is admissible at the substantive OWI trial to establish "consciousness of guilt." State v. Zielke, 137 Wis.2d 39, 47-48, 403 N.W.2d 427
(1987); State v. Crandall, 133 Wis.2d 251, 257-60,394 N.W.2d 905 (1986), citing among others, South Dakota v. Neville,459 U.S. 553 (1983), and State v. Albright, 98 Wis.2d 663, 668-69,298 N.W.2d 196 (Ct.App. 1980). This rule of admissibility is always subject to the corollary rule permitting an individual to introduce any evidence that tends to show that a refusal occurred for some reason other than a "consciousness of guilt." State v.Sayles, 124 Wis.2d 593, 596-98, 370 N.W.2d 265 (1985); State v.Bolstad, 124 Wis.2d 576, 585-86, 370 N.W.2d 257 (1985). And, despite the outcome of the substantive OWI trial, the prosecution may, in appropriate circumstances, continue to prosecute the refusal case. State v. Brooks, 113 Wis.2d 347, 335 N.W.2d 354
(1983). Although the Wisconsin Supreme Court in Brooks, supra, held that a trial court had the discretion to dismiss a refusal case once there had been a plea of guilty to the substantive OWI charge, the court stated the following:
 We stress that the power to dismiss is a discretionary one. There may be circumstances where the court may conclude in a particular case not to dismiss the refusal charge although a plea of guilty to OWI has been taken. Whether such refusal to dismiss can be justified as a proper exercise of discretion will be dependent upon the ambience of the particular case.
Brooks, 113 Wis.2d at 359.
The previous observations now lead to my response to your most significant inquiry — question 3. While I believe the burdens on the state of a refusal hearing occurring after the substantive OWI trial are negligible, the facts inspiring your inquiries suggest a far greater concern perceived by those individuals facing a refusal hearing prior to their substantive OWI trial
The basis for the perceived dilemma is the necessity of choosing between two constitutional rights: (1) the fifth amendment privilege against self-incrimination; and (2) the constitutionally protected interest in their driver's license, which prevents removal without due process. Dixon v. Love431 U.S. 105 (1977); Bell v. Burson, 402 U.S. 535 (1971); Best v.State, 99 Wis.2d 495. 299 N.W.2d 604 (Ct.App. 1980). Apparently, those individuals, perceive a fifth amendment *Page 10 
dilemma in being forced to either present their reasons for refusal of a chemical test at the refusal hearing, thereby disclosing the theory of their defense to the substantive OWI charge, as well as disclosing possibly incriminating evidence by the waiver of their privilege against self-incrimination, or remaining silent and losing their driver's license for a period of sixty days.
A distinction must be made between the two discrete questions the perceived dilemma raises: (I) does an individual's concern about compromising his or her privilege against self-incrimination by testifying at the refusal hearing provide a proper factor that the court may consider in the exercise of its discretion in determining whether to grant a stay; and (2) does that concern require the granting of a stay to protect that privilege. In my opinion, a court may properly take into account self-incrimination concerns in ordering a stay. Cf. State ex rel.Flowers v. Health and Social Services Department, 81 Wis.2d 376,396-97, 260 N.W.2d 727 (1978) (circuit court did not abuse its discretion in delaying parole revocation proceeding until after trial on pending criminal charge because of possible self-incrimination concerns). However, it is also my opinion that the concern over self-incrimination does not require a stay of the refusal hearing. Even when the substantive OWI charge is a criminal offense, I cannot agree with the contention of those that argue that either of the earlier described consequences violates their fifth amendment privilege against self-incrimination.[2]
First, the risk of disclosing the theory of the defense to the substantive OWI charge does not differ from the pretrial disclosures required in all other criminal cases. For example, inWilliams v. Florida, 399 U.S. 78 (1970), the United States Supreme Court upheld a statute compelling pretrial disclosure of the names and addresses of alibi witnesses intended to be called at trial. The Court noted that a criminal trial "is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." Williams, 399 U.S. at 82. The Court held:
 At most, the rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date *Page 11 
information that the petitioner from the beginning planned to divulge at trial. Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself.
Williams, 399 U.S. at 85. Subsequently, in Wardius v. Oregon,412 U.S. 470, 475 (1973), the Court held that pretrial discovery in criminal cases was a "two-way street," requiring reciprocal disclosures by the state under the due process clause. The Court's holding in Wardius does not diminish its earlier holding in Williams that no fifth amendment rights were implicated by the disclosure required of a defendant.
Unlike the notice of alibi statutes discussed in Williams andWardius, the implied consent law does not require a defendant to disclose information to the state regarding the defense to the substantive OWI charge. Rather, it merely gives an individual who has refused a chemical test the right to require the state to demonstrate that the police officers complied with the statute prior to requiring the test. Since to do so, the state must demonstrate that the officer had probable cause to arrest the individual on the substantive OWI charge, it is the state, not the defendant, which is compelled to "show its hand" on the merits of the substantive OWI charge in advance of the trial. Any lack of reciprocity in scheduling a refusal hearing prior to the substantive OWI charge is to the advantage of the individual who is not required to make equivalent disclosures.
Second, a more serious concern is the potential for compelling a disclosure of incriminating facts material to the defense at the substantive OWI trial. For the following reasons, however, I do not believe that an individual has a right to stay the refusal hearing on this basis. First, requiring an individual to defend a refusal hearing does not place that individual in an untenable position in a constitutional sense because he/she is forced to choose between not defending the refusal hearing or defending it by sacrificing his/her privilege against self-incrimination. Second, when and if such a dilemma would exist, a satisfactory resolution within the discretion of the trial court is available. *Page 12 
In Neely v. State, 97 Wis.2d 38. 292 N.W.2d 859 (1980), the Wisconsin Supreme Court considered the difficulties attached to a defendant's decision not to answer relevant inquiries having once testified during a trial. The court recognized that individuals are often required to make choices between "hard alternatives" that do not result in unconstitutional dilemmas. In Neely, the court held that while a defendant has an interest in defending against the state's accusations by testifying on his own behalf, neither the choice to testify nor the choice of alternatives a defendant must make once he waives his privileges by testifying can be said to be unconstitutionally imposed on him. Neely,97 Wis.2d at 52. The court relied upon an earlier decision of the United States Supreme Court:
 The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. . . . Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.
Neely, 97 Wis.2d at 52, quoting McGautha v. California, 402 U.S. 183,213 (1971) (citation omitted).
The language of McGautha is most compelling when one recognizes the significant choice faced by McGautha which was found acceptable by the United States Supreme Court. In McGautha, the Court found no intolerable tension between a defendant's constitutional right not to be compelled to be a witness against himself and the alleged due process right to be heard on the issue of punishment where the procedure provided for a unitary trial on both the issue of punishment and guilt in a capital case and the defendant was forced to choose whether to remain silent on the issue of guilt at the cost of surrendering any chance to plead his case on the issue of punishment or testify on the issue of punishment at the risk of damaging his case on guilt.McGautha, 402 U.S. at 214.
Subsequent decisions of the United States Supreme Court have further clarified the "hard choices" which do not compromise a defendant's fifth amendment rights. One area of concern has been in the context of public employe and public contractor law. The United States Supreme Court's major concern in this area has been in preventing testimony obtained from an employe under threat of *Page 13 
dismissal from being used against that person in a subsequent criminal proceeding. For example, in Garrity v. State of NewJersey, 385 U.S. 493, 500 (1967), police officers who were being questioned about alleged ticket fixing were informed that a refusal to answer questions on fifth amendment grounds would result in their dismissal. The Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." Similarly, in Uniformed San. Men Ass'n v. Com'r of San., 392 U.S. 280,284 (1968), city employes who refused to sign waivers of fifth amendment immunity before a grand jury were fired from their jobs. The Court acknowledged that the possible ineffectiveness of the waiver did not diminish the impropriety of the state's action. The real constitutional controversy arose from the alternatives with which the employes were faced, because "the precise and plain impact of the proceedings . . . was to present them with a choice between their constitutional rights or their jobs."
More recently, the Supreme Court considered the "hard choice" doctrine in the context of a prison disciplinary proceeding inBaxter v. Palmigiano, 425 U.S. 308 (1976). In Baxter, plaintiff asserted that a Rhode Island rule allowing the factfinder in a prison disciplinary proceeding to draw an adverse inference from a failure to testify derogated his fifth amendment privilege. The Court rejected this argument, finding the Rhode Island rule was not an invalid attempt to penalize the exercise of the privilege. Justice White wrote for the majority:
 [A] prison inmate in Rhode Island electing to remain silent during his disciplinary hearing, as respondent Palmigiano did here, is not in consequence of his silence automatically found guilty of the infraction with which he has been charged. Under Rhode Island law, disciplinary decisions "must be based on substantial evidence manifested in the record of the disciplinary proceeding.". . . It is thus undisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the Disciplinary Board. In this respect, this case is very different from the circumstances before the Court in the Garrity [v. New Jersey, 385 U.S. at 493] — Lefkowitz [v. Turley, 414 U.S. at 70] decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to *Page 14 
other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case.
Baxter, 425 U.S. at 317-18 (citations omitted).
The lesson of the preceding "hard decision" cases is that it is not constitutionally impermissible to require an individual to defend a refusal proceeding prior to the substantive OWI trial. There is no indication that invocation of the fifth amendment at a refusal hearing will result in an adverse decision. The state must always prove its case at the refusal hearing by establishing each of the necessary elements. There exists no requirement at the refusal hearing that an individual waive his/her immunity under the fifth amendment. Nor is there a threat that an individual will have their license suspended simply for invoking the privilege. Since there is no requirement that an individual either answer questions which might incriminate him/her in future criminal proceedings or have their license suspended or revoked, there is no impermissible effect on an individual's fifth amendment privilege in requiring the refusal hearing to occur prior to the substantive OWI trial.
The harshness of the "hard choice" doctrine militates against its implementation. However, the "hard choice" doctrine need not be determinative. In my opinion, a form of judicially created and judicially applied "use" immunity authorized by both decisions of the United States Supreme Court and our Wisconsin Supreme Court would be a preferable alternative.
In Lefkowitz v. Turley, 414 U.S. 70 (1973), after surveying numerous previous cases implicating an individual's fifth amendment rights, the United States Supreme Court stated:
 In any of these contexts, therefore, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Absent such protection, if *Page 15 
he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.
Lefkowitz, 414 U.S. at 78. Subsequently, in Baxter, the prison disciplinary hearing case, the Court stated "if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered `whatever immunity is required to supplement the privilege' and may not be required to `waive such immunity.'"Baxter, 425 U.S. at 317.
The Wisconsin Supreme Court has already fashioned such limited "use" immunity. In State v. Evans, 77 Wis.2d 225, 252 N.W.2d 664
(1977), the court resolved the issue of a defendant's fifth amendment rights being sacrificed by statements made to a probation officer by holding that:
 [S]tatements or the fruits of statements made by a probationer to his probation agent or in a probation revocation hearing in response to questions which, as here, are the result of pending charges or accusations of particular criminal activity, may not be used to incriminate the probationer in a subsequent criminal proceeding.
Evans, 77 Wis.2d at 227-28. In Evans, the court further stated:
 In order to guarantee the fifth amendment rights of a probationer or a parolee and at the same time to preserve the integrity of the probation system, we hold that upon timely objection in criminal proceedings, the testimony of a probationer or a parolee given in response to questions by a probation or parole agent or at a probation or parole revocation hearing, which questions are prompted by pending charges or accusations of particular criminal activity, or any evidence derived from such testimony, is inadmissible against the probationer or parolee during subsequent proceedings on related criminal charges except for purposes of impeachment or rebuttal where his testimony at the criminal proceeding is clearly inconsistent with the statements made previously. In such case the trial court may admit the revocation testimony or its fruits for the purpose of showing the probability that the probationer or parolee has committed perjury.
Evans, 77 Wis.2d at 235-36 (citations omitted). Likewise, testimony presented by a criminal defendant at a confession suppression hearing *Page 16 
is inadmissible at the criminal trial. State ex rel. Goodchild v.Burke, 27 Wis.2d 244, 265, 133 N.W.2d 753 (1965).
A similar rationale is appropriate in the present context. If the perceived dilemma were to exist, it would be proper to allow an individual to testify at the refusal hearing without fear that the testimony could be used in a subsequent substantive OWI trial. This form of limited judicially created and judicially applied "use" immunity would not be burdensome upon prosecutors because the nature of issues addressed at the refusal hearing do not allow for incriminating or inculpatory statements. Rather, those issues encourage only explanations favorable to the individual.
Although I believe that my response to question 3 is determinative of both questions 4 and 5, I will briefly address the concerns in each of those questions.
In question 4, you ask if in order to grant a stay, an individual must demonstrate an actual and/or substantial possibility of self-incrimination. You derive that standard from a federal decision. Liljenfeldt v. United States, 588 F. Supp. 966
(E.D. Wis. 1984). However, that standard is really no different than the standard approved, In Matter of Grant, 83 Wis.2d 77,82, 264 N.W.2d 587 (1978) — "the fear of self-incrimination must be `real and appreciable,' `not merely [an] imaginary possibility of danger.'" In my opinion, if such a situation of "real or appreciable" danger could be shown, a requirement akin to either of the two stated standards would be acceptable and within the discretion of a circuit court.
Your question 5 inquires regarding the necessity or availability of immunity to replace the potential loss of the privilege of self-incrimination. My previous response to question 3 demonstrates that I believe that a form of judicially created and judicially applied "use" immunity would be appropriate to supplant any claim of a loss of the privilege against self-incrimination.
DJH:JSS
[1] In addition to a "failure of proof" defense relating to the statutory identified elements at a refusal hearing, the implied consent law establishes an affirmative defense available to the accused. If an individual can demonstrate by a preponderance of the evidence that the refusal to submit to a test was due to a physical inability to submit to the test caused by a physical disability or disease unrelated to the use of alcohol, controlled substances or drugs, the refusal was not unlawful. Sec. 343.305 (3)(b), (5)(d), Stats.
[2] If in a particular case the OWI charge is not criminal, self-incrimination concerns would have no validity whatsoever, either to support a claim that the refusal hearing must be stayed, or to support a claim that the trial court, in the exercise of its discretion, should grant a stay because of those concerns. See Allen v. Illinois, 478 U.S. 364 (1986). *Page 17